**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

August 26, 2015

Blake W. Carey, Esquire
The Smith Firm, LLC
19716 Sea Air Ave., Ste. 2
Rehoboth Beach, DE 19971

Dean A. Campbell, Esquire
Georgetown Professional Park, N. Building
20175 Office Circle
Georgetown, DE 19947

RE:   Brian K. Marston v. Timothy L. Tenerovich
      C.A. No. 10208-MA

Dear Counsel:

This suit concerns a settlement agreement that resolved a mortgage foreclosure action in Superior Court. The mortgage in question had been signed by Respondent Timothy L. Tenerovich and delivered to Petitioner Brian K. Marston in 2006. The 2006 mortgage succeeded an earlier purchase money mortgage executed and delivered in 2002, securing the principal debt of $55,000 incurred when Tenerovich purchased a condominium unit (hereinafter "the property") in

Love Creek Cottages Condominium from Marston. The 2006 mortgage provided for the repayment of the principal debt plus interest on a monthly schedule, with a balloon payment due in 2008, which was never made. In December 2011, Marston initiated the mortgage foreclosure action against Tenerovich in Superior Court,[1] seeking a sheriff's sale of the property.

On December 20, 2013, the parties engaged in mediation and executed a settlement agreement that called for, *inter alia*, the private sale of the property within nine months from the date of the settlement, but if the property was not sold within that time period, then Marston had the right to place the property for sale at public auction and receive the net proceeds. On October 7, 2014, Marston filed a petition in this Court seeking specific performance of the settlement agreement and other related relief. Tenerovich answered the petition on November 21, 2014, and filed a counterclaim alleging equitable estoppel or, in the event specific performance is ordered by the Court, the imposition of a constructive trust to recover the costs of his investments in the property. Pending before me is Marston's motion seeking summary judgment in his favor on the claims raised in his petition and Tenerovich's counterclaim, which was filed on February 13, 2015. For the reasons that follow, I recommend that the Court grant the motion for summary judgment in its entirety.

---

[1] *Marston v. Tenerovich*, C.A. No. S11L-12-106 THG (Del. Super.).

RELEVANT BACKGROUND:

The settlement agreement executed by the parties on December 20, 2013, states the following:

>Brian K. Marston ("Marston") and Timothy L. Tenerovich ("Tenerovich") are parties to the above-captioned Superior Court action (the "Litigation").
>
>The Parties have agreed to mediate the Litigation and have agreed to the terms and conditions under which the claims and counterclaims under the Litigation are to be settled and the Litigation dismissed with prejudice, upon the terms and conditions set forth in this Settlement Agreement and Mutual Release ("Agreement").
>
>1. The parties agree to stay the above captioned action for a period of nine (9) months from the date of this Agreement. In the event Tenerovich fails to strictly comply with the payment obligation set forth in Paragraph 7, below, Tenerovich shall consent to the filing of judgment in favor of Marston and against Tenerovich in the amount of the Indebtedness as defined hereinafter.
>
>2. On or before January 3, 2014, Marston will provide Tenerovich a statement of all amounts due under the Note and Mortgage that is the subject of the Litigation, through the date of this Agreement. Tenerovich will have the opportunity to verify the amount due. The verified amount due through the date of this Agreement shall be referred to hereafter as the "Indebtedness". Marston agrees to suspend the further accrual of interest due under the Note and Mortgage from and after the date of this Agreement through the sale of the Property as provided herein.
>
>3. Tenerovich will have a period of sixty (60) days from the date of this Agreement to prepare the real property that is the subject of the Litigation ("Property") for sale through a licensed Delaware real estate broker. At the end of the 60-day period, Tenerovich will list the Property for sale with a licensed real estate broker ("Broker"), at a listing price as recommended by such Broker. Tenerovich will use good faith in allowing the Property to be shown to prospective purchasers and to cooperate with the Broker in the scheduling of such showings. A sale of the Property through the Broker, as set forth herein, must provide proceeds sufficient to repay the Indebtedness.

4. In the event the Property has not sold and settled within nine (9) months from the date of this Agreement, Marston will have the right to place the Property for sale at public auction through William Emmert or Richard Bryan. Tenerovich will use good faith in allowing the auctioneer access to the Property for preparation for auction.

5. Tenerovich will maintain property and casualty insurance on the Property as is currently in effect as of the date of this Agreement.

6. The Parties, through their attorneys, agree to dismiss with prejudice the separate action between the Parties in Superior Court, captioned *Tenerovich v. Marston*, C.A. No. S13C-01-013 ESB, within ten (10) days of the date of this Agreement.

7. On or before January 3, 2014, Tenerovich will deliver to Marston's attorney the sum of Fifteen Thousand Dollars ($15,000.00) in good funds, payable to The Smith Firm.

8. In the event the net proceeds from the sale of the Property at public auction are less than the Indebtedness, Marston agrees to forgive the deficiency but shall have the right to report the deficiency to the Internal Revenue Service as "forgiveness of debt".

9. The Parties understand and agree that this Agreement represents compromises of disputed claims and that the settlement and the provisions of this Agreement are not to be construed as an admission of liability by either party, nor asserted by either party, to be an admission of liability. It is understood and agreed that the Agreement will not be offered by any party, person or entity as evidence of any admission of liability at any time for any purpose.

10. The Parties represent and acknowledge that they have read and understand the terms set forth herein and have had such terms and provisions explained to them by their counsel of record. In signing this Settlement Agreement, the parties confirm that they do so based upon advice of their own counsel following consultation with their counsel regarding the terms and conditions of this Agreement.[2]

Although the agreement was signed on December 20, 2013, and the nine-month period has expired, the property has yet to be sold at auction.

---

[2] Petitioner's Motion for Summary Judgment, Exhibit A. Docket Item ("DI") 8.

ISSUES:

In support of his motion for summary judgment, Marston argues that no genuine issues of material fact exist because Tenerovich has admitted in his pleading that he will not cooperate in an auction sale of the property,[3] in violation of the terms of their settlement agreement. Marston also argues that he is entitled to summary judgment in his favor on Tenerovich's counterclaim because the allegations contained therein are identical to allegations that were previously raised by Tenerovich in the Superior Court complaint that was dismissed with prejudice as part of the settlement agreement and, therefore, Tenerovich's counterclaim is barred by the doctrines of *res judicata* and collateral estoppel.

Tenerovich presents three separate arguments in opposition to the motion for summary judgment. First, Tenerovich argues that Marston was the first party to breach the settlement agreement by failing to provide Tenerovich with an accounting of the amounts due under the Note and Mortgage by January 3, 2014. According to Tenerovich, Marston's breach prevented him from obtaining the financing needed to pay off his indebtedness before the 60-day period expired and the property had to be listed for sale. It was not until April 3, 2014, that

---

[3] In Paragraph 29 of his Verified Answer and Counterclaim, Tenerovich admitted that he "will not allow potential buyer's access to the property during the auction, will refuse to execute any documents necessary to effectuate the transfer of the property to a potential buyer, and will refuse to pay the net proceeds of the auction to Marston." DI 6

Tenerovich received the accounting from Marston, which Tenerovich claims was an unreasonable delay that placed him in the difficult position of signing a listing agreement without first knowing if he could refinance, contrary to the framework he had in mind when he signed the agreement. Furthermore, Tenerovich argues that he has had no opportunity to engage in discovery to investigate the accuracy of the accounting and to determine why the accounting was provided three months late. Finally, Tenerovich argues the issue of whether Marston's breach was a material or non-material breach of the settlement agreement is a factual question for the Court and, therefore, inappropriate for summary judgment.

Next, Tenerovich argues that Marston is not entitled to summary judgment on the counterclaim because Marston comes to this Court with unclean hands. Although his argument is not entirely clear, Tenerovich appears to arguing that the doctrines of *res judicata* and collateral estoppel do not apply to his counterclaim because the original court, i.e., the Superior Court, lacked jurisdiction to consider the equitable defense of unclean hands that Tenerovich is now raising. According to Tenerovich, Marston committed three separate and distinct acts that would constitute unclean hands: (a) Marston provided a defective deed to the property, (b) Marston failed to satisfy the 2002 purchase money mortgage until more than five years had passed, and (c) Marston breached the settlement agreement by failing to provide an accounting within the time period provided and delayed its

presentment for three months. These errors allegedly impacted Tenerovich's ability to sell or refinance the property, and Tenerovich contends that each error constitutes unclean hands on Marston's part.

Last, Tenerovich also contends that if Marston's foreclosure action in Superior Court had advanced through to its intended conclusion, it would have resulted in a sheriff's sale of the property. Since Marston is now seeking the same relief through specific performance of the settlement agreement, Tenerovich argues that Marston is engaged in claim splitting, which is contrary to Delaware public policy and barred under the *doctrine of res judicata*, citing *Grunstein v. Silva*, 2011 WL 378782 (Del. Ch. Jan. 31, 2011) .

Marston responds that even if he failed to provide an accounting within the time period specified by the settlement agreement, his breach was immaterial and now moot because Tenerovich has had the payoff figure since April 3, 2014, and has not been prejudiced by any delay. As to Tenerovich's argument that he was unable to seek any financing before the property was listed for sale, Marston counters that the settlement agreement is completely silent regarding any financing to be obtained or applied for by Tenerovich during the 60-day time period. Under the settlement agreement, 60 days was the time period allotted to Tenerovich to prepare the real property for sale. Marston also argues that Tenerovich's counterclaim is clearly barred by the doctrines of *res judicata* and collateral

estoppel, and the fact that Tenerovich was unable to raise unclean hands as a defense in the Superior Court action did not deprive that court of jurisdiction over Tenerovich's lawsuit. Moreover, two of the alleged acts on which Tenerovich bases his defense of unclean hands, i.e., the defective deed and Marston's failure to satisfy the previous mortgage, were raised as affirmative claims in Tenerovich's complaint in Superior Court, which was subsequently dismissed with prejudice.

ANALYSIS:

Summary judgment may be granted under Court of Chancery Rule 56 if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[4] If the moving party meets this burden, then the burden shifts to the nonmoving party to demonstrate that there are genuine issues of material fact that require resolution at trial.

Tenerovich's attempt to demonstrate the existence of a genuine issue of material fact is unavailing for several reasons. First, even assuming that Marston failed to provide Tenerovich with the payoff figure by January 3, 2014, this alleged breach of the settlement agreement was immaterial and did not relieve Tenerovich of having to perform his obligations under the agreement. The factors to consider when determining whether a failure to perform is material, thus justifying repudiation of a contract, include:

---

[4] Ct. Ch. R. 56(c).

(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.[5]

According to the terms of the settlement agreement, the payoff figure was to be used to determine the amount of Tenerovich's indebtedness for the purpose of: (a) setting a minimum sales price if the property was sold privately, or (b) calculating the amount of debt to be forgiven for tax purposes if the proceeds of the public auction netted less than Tenerovich's actual indebtedness. Although Tenerovich argues that Marston's breach deprived him of an opportunity to obtain financing to purchase the property before it had to be listed for sale, there is no language in the settlement agreement suggesting that this was part of the bargain struck by the parties.[6] The agreement simply states that Tenerovich had 60 days to prepare the property for sale with a licensed Delaware real estate broker. It is silent about any opportunity to obtain refinancing. "In the absence of any ambiguity, the parties are

---

[5] *Biolife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. Oct. 6, 2003) (quoting *Restatement (Second) of Contracts* § 241 (1981)).

[6] Indeed, Tenerovich appears to acknowledge as much in his Answering Brief when he states that he was "placed in a position of signing a listing agreement to sell his property without first knowing if he could refinance – completely opposite of the framework *he* had in mind when he signed the agreement." Respondent's

bound by the plain meaning of their contract."[7] Since Tenerovich was not deprived of any benefit contemplated by the settlement agreement, Marston's breach was not material as a matter of law.[8]

Tenerovich concedes that he received the payoff figure – or the accounting, as he refers to it, on or about April 3, 2014, three months after it was due, but nearly six months before Marston was entitled to place the property for sale at public auction. Therefore, not only was Marston's breach immaterial as a matter of law, but it was also cured while there was still ample time for the property to be sold through a private sale.

The parties do not dispute the existence of the settlement agreement, but they disagree as to who was responsible for breaching it first. I conclude as a matter of law, that, even assuming Marston was the first party to breach the agreement, Marston's breach was not material, and did not justify Tenerovich's repudiation of the agreement through his avowed refusal to cooperate with the auction process.

---

Answering Brief to Petitioner's Motion for Summary Judgment, at 9 (emphasis added). DI 10.

[7] *Ingram v. Thorpe*, 2014 WL 4805829, at *3 (Del. Sept. 26, 2014) (citing *Watkins v. Beatrice Co., Inc.,* 560 A.2d 1016, 1021 (Del. 1989)).

[8] *See, e.g., Matthew v. Laudamiel*, 2014 WL 5499989, at *2 (Del. Ch. Oct. 30, 2014) ("[A] question of materiality does not inevitably defeat a summary judgment motion if the alleged breach, as a matter of law, was not material.").

Tenerovich also attempts to avoid his obligations under the settlement agreement by arguing that Marston's petition for specific enforcement constitutes claim spitting under the doctrine of *res judicata* because Marston is seeking the same relief that he would have been able to obtain in Superior Court, i.e., a public auction of the property, if the parties had not settled the foreclosure action.[9] On the flip side, Marston is seeking summary judgment in his favor on Tenerovich's counterclaim, which Marston argues is barred by the doctrine of *res judicata* because the allegations of Tenerovich's counterclaim are identical to the allegations in Tenerovich's civil action that was dismissed with prejudice as part of their settlement agreement.

A party asserting the doctrine of *res judicata* as a bar to a subsequent action must demonstrate that: (1) the court making the prior adjudication had jurisdiction; (2) the parties in the current action are either the same parties or in privity with the parties in the prior action; (3) the prior adjudication was final; (4) the causes of action were the same in both cases or the issues decided in the prior action were the same as those raised in the present case; and (5) the issues in the prior action were decided adversely to the party's contention in the present case.[10]

---

[9] I note that Tenerovich appears to be conceding the foreclosure action would have culminated in a sheriff's sale had Marston not entered into the settlement agreement with Tenerovich.

[10] *See Hendry v. Hendry*, 2006 WL 4804019, at *8 (Del. Ch. May 30, 2006).

*Res judicata* constitutes a bar on all claims that were litigated or which could have been litigated in the earlier action.[11]

Marston is seeking specific enforcement of a settlement agreement, a contractual claim that differs from the mortgage foreclosure action he filed in Superior Court. The issues raised by Marston in this case were not and could not have been litigated in the earlier action. Therefore, Tenerovich's attempt to invoke the doctrine of *res judicata* must fail.

While Marston also has asserted the doctrine of *res judicata* as the basis for summary judgment in his favor on Tenerovich's counterclaim, I believe it is more efficient for the Court to decide this motion on the basis of the contract between the parties. To the extent that the parties resolved certain issues by settlement in the previous action, they are bound by that agreement and any breach of that agreement is subject to enforcement by this Court. Therefore, it is necessary to examine the issues raised in C.A. Nos. S11L-12-106 THG and S13C-01-013 ESB, and compare them with issues raised in this action and the terms of the parties' settlement agreement.

On December 30, 2011, Marston filed a mortgage foreclosure complaint – both *in rem* and *in personam* – against Tenerovich in the Superior Court of

---

[11] *See One Virginia Avenue Condominium Assoc. v. Reed*, 2005 WL 1924195, at *7 (Del. Ch. Aug. 8, 2005) (citing *Trans World Airlines, Inc. v. Hughes*, 317 A.2d 114, 118 (Del. 1974)).

Delaware in and for Sussex County.[12]  While discovery was proceeding in the forfeiture action, on January 11, 2013, Tenerovich filed a complaint in the same court against Marston alleging abuse of process, breach of special warranty deed, slander of title, and breach of contract, seeking ordinary and punitive damages.[13] The two actions were consolidated by order dated April 11, 2013.[14]  The allegations contained in Paragraphs 1 through twenty six (26) of Tenerovich's counterclaim in this action have been copied essentially *verbatim*, with only a few minor deviations, from the allegations contained in Paragraphs 3 through twenty-eight (28) of Tenerovich's civil action (C.A. No. S13C-01-013 ESB).  Count I (equitable estoppel) of Tenerovich's counterclaim in this case is based entirely on the claims previously set forth in Counts I through IV of C.A. No. S13C-01-013 ESB.

As part of their settlement agreement, the parties agreed, *inter alia*, that C.A. No. S13C-01-013 ESB would be dismissed with prejudice within ten days of the date of the agreement.[15]  Marston also agreed to limit the amount of indebtedness by suspending the further accrual of interest due under the Note and Mortgage

---

[12] *Marston v. Tenerovich*, C.A. No. S11L-12-106-013 THG (Del. Super.), DI 1

[13] *Tenerovich v. Marston*, C.A. No. S13C-01-013 ESB (Del. Super.) DI 1.

[14] *Marston v. Tenerovich,* C.A. No. S11L-12-106-013 THG (Del. Super.) DI 23; *Tenerovich v. Marston*, C.A. No. S13C-01-013 ESB (Del. Super.) DI 3.

[15] The settlement agreement was signed on December 20, 2013.  By Order dated May 28, 2014, the consolidated case was dismissed with prejudice.  *Marston v. Tenerovich*, C.A. No. S11L-12-106 THG (Del. Super.) DI 32.

from and after the date of the agreement through the sale of the property and, in the event that the net proceeds from the public auction were less than the amount of indebtedness, Marston also agreed to forgive the deficiency.

Under the terms of the settlement agreement, Marston had the right to place the property for sale at public auction on or about September 20, 2014. Tenerovich's refusal to cooperate in the auction process led to Marston filing his petition for specific enforcement on October 7, 2014. Tenerovich's answer and counterclaim was filed on November 21, 2014. On December 19, 2014, Marston filed his answer to the counterclaim. I conclude that by filing a counterclaim (Count I - Equitable Estoppel) based on facts previously alleged in C.A. No. S13C-01-013 ESB, a complaint that the parties had agreed to dismiss with prejudice as part of their settlement agreement, Tenerovich has committed another material breach of the settlement agreement. It is a material breach because: (1) the counterclaim has forced Marston to defend himself against claims he believed had been finally resolved, thus depriving Marston of a benefit that he reasonably expected from the settlement agreement; (2) Marston cannot be adequately compensated for the deprivation of this benefit if Tenerovich is allowed to continue to litigate his counterclaim; (3) Tenerovich will suffer no forfeiture since he agreed to the dismissal with prejudice of his Superior Court complaint; (4) there is no possibility of a cure unless Tenerovich dismisses his counterclaim with

prejudice; and (5) Tenerovich's behavior does not appear to comport with the standards of good faith and fair dealing. Similarly, by seeking a constructive trust against the real property to recover the costs of his investment therein (Count II of the Counterclaim), Tenerovich has committed another material breach of the settlement agreement because the imposition of a constructive trust would deprive Marston of the benefit he reasonably expected from a public auction of the property, a benefit he bargained for by, *inter alia*, giving up his right to charge further interest on the loan and to go after Tenerovich personally for any deficiency. It is unlikely that Tenerovich will suffer any forfeiture since he has had the benefit of residing in the property for approximately 13 years, and has been on notice for the past four years that Marston was pursuing the sale of the property.

For the foregoing reasons, I recommend that the Court grant summary judgment in favor of Marston and enter an order mandating specific performance of the settlement agreement and dismissal of Tenerovich's counterclaim. I am waiving a draft report and issuing this recommendation as my final report. The parties are referred to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz